Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANITA KUNZMAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**SUNDAE FUNDING, INC.**, a Delaware corporation, and **SUNDAE, INC.**, a Delaware corporation,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Anita Kunzman ("Plaintiff" or "Kunzman") brings this Class Action Complaint and Demand for Jury Trial against Defendant Sundae Funding, Inc., doing business as Sundae ("Defendant" or "Sundae Funding") and Defendant Sundae, Inc. ("Defendant" or "Sundae, Inc.") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing text messages and calls, including calls using pre-recorded voice messages, without consent to consumers, including to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon

personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Anita Kunzman is a resident of Port Richey, Florida.

2. Defendant Sundae Funding, Inc. is a Delaware corporation headquartered in San Francisco, California. Defendant Sundae Funding conducts business throughout this District, California, and the U.S.

3. Defendant Sundae, Inc. is a Delaware corporation headquartered in San Francisco, California. Defendant Sundae, Inc. conducts business throughout this District, California, and the U.S.

**JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction, and the venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District, and the wrongful conduct giving rise to this case was directed from this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in September 2022 alone, at a rate of 139.9 million calls per day. www.robocallindex.com (last visited October 20, 2022).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant Sundae Funding is a Real Estate Brokerage offering real estate services to consumers. Defendant Sundae Funding holds real estate brokerage licenses in multiple states and provides real estate products and services to consumers across multiple states throughout the U.S. including Florida.[3]

15. Defendant Sundae, Inc., owns, hosts, manages, and provides an online marketplace via its websites sundae.com and marketplace.sundae.com to facilitate the buying and selling of real estate properties.[4]

16. Defendant Sundae Funding is a wholly owned subsidiary of Defendant Sundae, Inc. Defendant Sundae Funding is solely responsible for advertising and conducting all real estate business transactions through Defendant Sundae, Inc.'s marketplace as their licensed real estate brokerage.[5]

17. Both Defendants work together to conduct their real estate business through the online marketplace.

18. Defendant Sundae Funding gathers leads of consumers who are looking to sell their properties and gets them to list their properties on their platform. Defendant promises the consumers to get investors to bid on their properties.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/sundaehq/about/
[4] https://sundae.com/disclosures/
[5] *Id.*

- 4 -
COMPL.

19. Defendant Sundae Funding also onboards investors to Defendant Sundae, Inc.'s marketplace and induces them to place bids on the properties listed on the marketplace. Defendant Sundae, Inc. offers different membership plans for investors which can cost up to $499 a month.[6]

20. When an investor places a bid for a property listed on Defendant Sundae, Inc.'s marketplace, Defendant deducts a fee, which they call "The Sundae Buyer Premium", from the bids as their fee, resulting in a reduced net price to the seller.[7]

21. Thus, the sellers who have listed their properties for sale on the marketplace, receive the net price as bids, from which Defendant Sundae, Inc. has already deducted their commission or fee for the sale of the property, which would have otherwise been paid to the seller.

22. A former employee recently wrote "We had to tell investors Sundae was getting their commission from the homeowner and the Market Advisors told the homeowners that Sundae gets paid by the Investor, or homeowner."[8]

23. Defendant Sundae Funding hires employees to gather consumer leads and to advertise Defendant Sundae, Inc.'s marketplace and to induce consumers to list their properties on the marketplace for sale where they claim a market of investors will bid on their property.

24. Defendant Sundae Funding has 68 salespersons affiliated to conduct business on its behalf.[9]

25. Defendant Sundae Funding directs its employees to gather consumer leads and to solicit their real estate services to sign up consumers to sell their home on their website.

---

[6] https://sundae.com/investor/pricing/
[7] https://sundae.com/investor/faq/#sundae-fees-deducted
[8] https://www.glassdoor.com/Reviews/Sundae-Reviews-E2555785_P3.htm?filter.iso3Language=eng
[9] From the State of California, Department of Real Estate Website (last visited on October 20, 2022):
   https://www2.dre.ca.gov/PublicASP/pplinfo.asp?function=sales&License_id=02088298&start=1

26. As part of its lead generation efforts, Defendant Sundae Funding uses automated systems to send outbound telephonic sales calls, including calls using pre-recorded voice messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are registered on the National Do Not Call Registry.

27. Defendant Sundae Funding's employees have posted reviews showing Defendant Sundae Funding's lead generation activities, and their practice of cold calling consumers, for instance:

- **Joey Rucks** — Onboarding Team Lead

  Personal Accomplishments:

  - I lead the department in new investor accounts acquired in the first month.
  - I lead the team (15) in department metrics in the first 3 months.
  - I set a department monthly record with 219 investor accounts acquired.
  - In the second month, I was tasked with training all new hires on cold calling, sales calls, and objection handling.
  - Promoted to Onboarding Advisors Team Lead in month 4. Then managing a team of 5.

  Responsibilities:

  - Generate leads by researching new platforms and online media to connect with local real estate professionals. Primary contacts include Investors, Agents, and Brokers.
  - Convert leads to Sundae Real Estate Investors through social media engagement, cold calling, and email campaigns.
  - Qualify them for Sundae's marketplace through prospecting and relationship building.
  - Maintain a working knowledge of Sundae's products and services such as financing, resale brokerage, title, and escrow to introduce the Marketplace properly.
  - Able to work cross-functionally within Sundae's internal teams to constantly improve the investor experience. [10]

-

---

[10] https://www.linkedin.com/in/joey-rucks-1a769496/




**Zak (Zachary) Bigelow, MBA**
Director Of Sales at Sundae

**Director Of Sales**
Sundae · Full-time
Nov 2021 - Present · 1 yr

Sundae's mission is to help homeowners get the best outcome when it's time to sell a house that needs some love. Get a better price and pay zero fees. Sell as-is. No cleanup, repairs, showings or open houses. Close with certainty on your timeline, and get a $10,000 cash advance before closing. Learn more at sundae.com.

- Hired to convert Onboarding Advisors from Customer Support Role to B2B Outbound Sales Team
- Grew Team from 13 to 34
- Grew average individual production by 210%
- Lowered cost per acquisition by 85%
- Grew team from selling 1 product line to 4 product line

- Promoted In Week 12 to manage B2C outbound sales team, Market Advisors
- Increased Individual Productivity by 410% in 6 weeks o Increased Individual Productivity by 886% in 14 weeks
- Grew Team from 7 to 36
- Sourced 100% Of Our Own Leads
- Decreased Cost Per Acquisition by 67%

[11]

## PLAINTIFF KUNZMAN'S ALLEGATIONS

28.   Plaintiff Kunzman is the subscriber and the sole user of the cell phone number ending with xxx-xxx-1660.

29.   Plaintiff Kunzman registered her cell phone number on the National Do Not Call Registry on November 18, 2004.

30.   In October 2022, Plaintiff Kunzman started receiving unsolicited telemarketing calls from Defendant Sundae Funding including a pre-recorded voicemail, soliciting Plaintiff to use Defendant Sundae, Inc.'s real estate services.

31.   On October 6, 2022, at 10:31 AM, Plaintiff received a text message to her cell phone from the phone number 813-212-8654. The text message was promoting Defendant Sundae, Inc.'s marketplace to sell their property and seeking information about whether Plaintiff was looking to sell her property. The text message provided a callback number 323-977-7798.

---

[11] https://www.linkedin.com/in/zak-bigelow-mba-82918b156/

> +1 (813) 212-8654
>
> Text Message
> Today 10:31 AM
>
> Hey, it's Deborah with Sundae. Are you still considering selling your property? Sundae's process is completely free and absolutely no obligation, we can provide you with multiple cash offers on our marketplace. Would you like to learn more? If so, feel free to call or text me at:
> 323-977-7798

32. On October 6, 2022, Plaintiff Kunzman received a call to her cell phone from Defendant, from phone number 813-212-8654. Plaintiff did not answer the call and received a pre-recorded voicemail.

33. The voicemail received by Plaintiff Kunzman started abruptly in the middle of a sentence. It failed to identify the name of the company on whose behalf the solicitation was sent, or the telephone solicitor who made the solicitation call. However, the voicemail provided the same callback number, 323-977-7798, as the text message Defendant Sundae Funding sent to Plaintiff. The prerecorded voice message stated:

> "…its off market price for your home at no additional cost to the seller. If you are at all considering selling feel free to reach out to me, I'd love to share some great info with you. My direct line is 323-977-7798. Thanks! Talk to you soon."

34. On calling the phone number 323-977-7798, it is answered initially by an automated voice message which says, "Thanks for calling Sundae. All calls are recorded for quality and training purposes."

35. Plaintiff never consented to be called by either of the Defendants.

- 8 -
COMPL.

36. The unauthorized telephonic sales calls that Plaintiff received from Defendants, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of her phone line and the memory on the phone.

37. Seeking redress for these injuries, Plaintiff Kunzman, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which prohibits the unsolicited telemarketing at issue here.

## CLASS ALLEGATIONS

38. Plaintiff Kunzman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) either of the Defendants called on their cellular telephone number (2) using an artificial or pre-recorded voice.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) either of the Defendants called more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the National Do Not Call Registry for at least thirty days.

39. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or

released. Plaintiff Kunzman anticipates the need to amend the Class definitions following appropriate discovery.

40. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether either of the Defendants placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether either of the Defendants placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(c) whether Defendants' conduct violated the TCPA; and

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

43.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kunzman. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kunzman and the Pre-recorded No Consent Class)**

44.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45.     Defendant Sundae Funding and/or its agents transmitted unwanted telephone calls to Plaintiff Kunzman and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

46.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Kunzman and the other members of the Pre-recorded No Consent Class.

47. The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Kunzman and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kunzman and the Do Not Call Registry Class)**

48. Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

51. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

52. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

53. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kunzman requests a jury trial.

RESPECTFULLY SUBMITTED AND DATED this 8th day of November, 2022.

By: <u>*/s/ Rachel E. Kaufman*</u>
RACHEL E. KAUFMAN
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
rachel@kaufmanpa.com
*Attorney for Plaintiff and the Proposed Classes*